# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02938-RBJ

KRYSTAL GRAY, Individually and
On Behalf of All Others Similarly Situated,

     *Plaintiff*,

v.

DELTA COUNTY MEMORIAL HOSPITAL DISTRICT,
d/b/a/ DELTA COUNTY MEMORIAL HOSPITAL,

     *Defendant*.

JURY TRIAL DEMANDED

========================================================

# JOINT MOTION FOR APPROVAL
## OF FLSA COLLECTIVE ACTION SETTLEMENT

========================================================

## TABLE OF CONTENT

PROCEDURAL HISTORY ........................................................................................................3

SUMMARY OF SETTLEMENT TERMS ..............................................................................4

    I.  Settlement Amount.......................................................................................................4

    II.  Attorneys' Fees, Service Award, and Administration Costs ..............................................5

    III. Releases ........................................................................................................................6

LEGAL ARGUMENT ............................................................................................................7

    I.  The Court should finally certify the Collective.................................................................8

       A.  Plaintiffs' employment settings and experiences are similar in material respects. ..........9

       B.  For purposes of this settlement, Defendant's defenses can be resolved on a collective basis using representative, common proof. ................................................................10

       C.  Fairness and procedural considerations support collective treatment...........................13

    II.  The Court should approve the Settlement Agreement as fair and reasonable resolution of a *bona fide* dispute under the FLSA.............................................................................13

       A.  The Settlement was reached as a result of a *bona fide* dispute......................................14

       B.  The Settlement is fair and equitable to all parties........................................................16

    III. The proposed attorneys' fees award and service award are reasonable. ..........................21

CONCLUSION.......................................................................................................................21

## **TABLE OF AUTHORITIES**

**Cases**

*Alvarado Partners v. Mehta*,
    723 F. Supp. 540 (D. Colo. 1989) ...........................................................................20

*Ashley v. Reg'l Transp. Dist.*, No. 05-cv-01567-WYD-BNB, 2008 U.S. Dist. LEXIS 13069 (D.
    Colo. Feb. 11, 2008) ...........................................................................................17

*Baker v. Vail Resorts Mgmt. Co.*,
    No. 13-cv-01649-PAB-CBS, 2014 U.S. Dist. LEXIS 22812 (D. Colo. Feb. 24, 2014) .... 14, 15,
    16, 20

*Brayman v. Keypoint Gov't Solutions, Inc.*,
    595 F. Supp. 3d 983 (D. Colo. 2022) .......................................................... 8, 10, 12

*Charbonneau v. Mortg. Lenders of Am. L.L.C.*,
    No. 2:18-cv-02062-HLT-ADM, 2021 U.S. Dist. LEXIS 4537 (D. Kan. Jan. 11, 2021) .........11

*Christeson v. Amazon.com.ksdc, LLC*,
    No. 18-2043-KHV, 2019 U.S. Dist. LEXIS 82718 (D. Kan. May 16, 2019) ...........................7

*Cory House v. Majestic Dude Ranch*,
    No. 20-cv-01505-KLM, 2021 U.S. Dist. LEXIS 162164 (May 4, 2021) ..................................9

*Falcon v. Starbucks Corp.*,
    580 F. Supp. 2d 528 (S.D. Tex. 2008) ................................................................13

*Florece v. Jose Pepper's Rests., LLC*,
    No. 20-2339-ADM, 2021 U.S. Dist. LEXIS 209010 (D. Kan. Oct. 29, 2021) .......................14

*Gambrell v. Weber Carpet, Inc.*,
    No. 10-2131-KHV, 2012 U.S. Dist. LEXIS 154586 (D. Kan. Oct. 29, 2012) ..........................8

*Geiger v. Z-Ultimate Self Def. Studios LLC*,
    No. 14-cv-00240-REB-NYW, 2016 U.S. Dist. LEXIS 202320 (D. Colo. Nov. 23, 2016) ........9

*Gottlieb v. Wiles*,
    11 F.3d 1004 (10th Cir. 1993) ...............................................................................18

*Herring v. Thunder Ridge Trucking & Filtration, Inc.*,
    No. 15-cv-00062-RM-KLM, 2016 U.S. Dist. LEXIS 182807 (D. Colo. May 24, 2016) .. 14, 16,
    20

*Judd v. Keypoint Gov't Sols., Inc.*,
    No. 18-cv-00327-RM-STV, 2021 U.S. Dist. LEXIS 3380 (D. Colo. Jan. 8, 2021) ..................8

*Landry v. Swire Oilfield Services, L.L.C.*,
    252 F. Supp. 3d 1079 (D.N.M. 2017) ......................................................................9

*Lozoya v. Allphase Landscape Constr., Inc.*,
  No. 12-cv-1048-JLK, 2014 U.S. Dist. LEXIS 7137 (D. Colo. Jan. 21, 2014) ..................... 9, 12

*Lucas v. Kmart Corp.*,
  234 F.R.D. 688 (D. Colo. 2006) ................................................................................. 17, 20

*Lynn's Food Stores v. United States*,
  679 F.2d 1350 (11th Cir. 1982) ........................................................................................ 14

*Martin v. Spring Break '83 Prods., LLC*,
  688 F.3d 247 (5th Cir. 2012) ............................................................................................ 14

*Martinez v. Back Bone Bullies Ltd.*,
  Case No. 21-cv-01245-MEH, 2022 U.S. Dist. LEXIS 45870 (D. Colo. Mar. 15, 2022) ......... 14

*Medrano v. Flowers Foods, Inc.*,
  No. 16-350 JCH/KK, 2021 U.S. Dist. LEXIS 143745 (D.N.M. Aug. 2, 2021) ....................... 12

*Murray v. Tips, Inc.*,
  2020 U.S. Dist. LEXIS 63923 (D. Colo. Apr. 13, 2020) ....................................................... 18

*Oppenlander v. Standard Oil Co. (Indiana)*,
  64 F.R.D. 597 (D. Colo. 1974) ......................................................................................... 19

*Pliego v. Los Arcos Mexican Rests., Inc.*,
  313 F.R.D. 117 (D. Colo. 2016) ............................................................................... 13, 14, 19

*Prim v. Ensign United States Drilling, Inc.*,
  2018 U.S. Dist. LEXIS 131215 (D. Colo. Aug. 3, 2018) ....................................................... 7

*Riley v. D. Loves Rests.*,
  No. 20-1085 WJ/KK, 2021 U.S. Dist. LEXIS 68126 (D.N.M. Apr. 8, 2021) ......................... 14

*Rodriguez v. 5830 Rest. Corp.*,
  No. 21-cv-01166-KLM, 2023 U.S. Dist. LEXIS 18906 (D. Colo. Feb. 3, 2023) ................... 14

*Rothe v. Battelle Mem. Inst.*,
  No. 1:18-cv-03179-RBJ, 2021 U.S. Dist. LEXIS 117836 (D. Colo. June 24, 2021) ... 17, 18, 19

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
  314 F.3d 1180 (10th Cir. 2002) ........................................................................................ 16

*Thiessen v. Gen. Elec. Cap. Corp.*,
  267 F.3d 1095 (10th Cir. 2001) .......................................................................................... 8

*Thompson v. Bruister & Assocs.*, Inc.,
  967 F. Supp. 2d 1204 (M.D. Tenn. 2013) ............................................................................ 9

*Underwood v. NMC Mortg. Corp.*,
  No. 07-2268-EFM, 2009 U.S. Dist. LEXIS 39743 (D. Kan. May 11, 2009) ................... 10, 12

*Whittington v. Taco Bell of Am., Inc.*,
  No. 10-cv-01884-KMT-MEH, 2013 U.S. Dist. LEXIS 161665 (D. Colo. Nov. 13, 2013) ...... 16

*Wilkerson v. Martin Marietta Corp.*,
   171 F.R.D. 273 (D. Colo. 1997) ........................................................................... 17, 18

## Statutes and Regulations

29 U.S.C. § 216 .................................................................................................................. 7

C.R.S. § 24 ......................................................................................................................... 7

Fed. R. Civ. P. 23 ............................................................................................................. 16

Plaintiff Krystal Gray, individually and on behalf of all others similarly situated, and Defendant Delta County Memorial Hospital District, through their respective undersigned counsel, respectfully submit this Joint Motion for Approval of FLSA Collective Action Settlement ("Motion").

## INTRODUCTION

The parties seek the Court's approval of the Settlement Agreement and Release ("Settlement" or "Settlement Agreement") entered into between Plaintiff and Defendant on May 17, 2023.[1] In this action, Plaintiff alleges that Defendant failed to provide her and the Collective members (collectively, "Plaintiffs") with legally compliant meal and rest periods and failed to pay her and the Collective members for all hours worked, including overtime. After over three years of litigation, the parties have reached an agreement to fully resolve Plaintiffs' claims under the Fair Labor Standards Act ("FLSA").[2]

The proposed total Settlement Amount is $200,000.00, which will be placed in a common fund without the need for Collective members to submit a claim as a condition of payment. (Settlement Agreement, ¶¶ 2-3). This amount will be allocated as follows: (1) $ 11,000.00 to Collective members as compensation for unpaid overtime; (2) 11,000.00 to Collective members as liquidated damages under the FLSA;[3] (3) $5,500.00 to Plaintiff Krystal Gray as a Service

---

[1] A true and correct copy of the Settlement Agreement is attached as **Exhibit A** to the Declaration of Attorney Carolyn H. Cottrell ("Cottrell Decl.").

[2] The parties have also agreed, as part of the Settlement, that Plaintiff will stipulate to the dismissal of her Rule 23 class claims without prejudice. (Settlement Agreement at ¶ 5).

[3] As explained in the Cottrell Decl., this represents nearly 100% of the FLSA claims for the default 2-year statutory period.

Award; (4) $170,000.00 to Schneider Wallace Cottrell Konecky LLP ("SWCK") for attorneys' fees and costs; and (5) and an amount not to exceed $2,500.00 to the Settlement Administrator for administration costs. Half of each amount paid to any individual under the Settlement represents alleged unpaid overtime wages will be subject to tax withholding. The other half represented an alleged claim to FLSA liquidated damages, for which an IRS Form 1099 shall issue. The same applies to the Service Award for Plaintiff Krystal Gray. Defendant will use the most recent W-4 information on file for each of the Plaintiffs to determine the tax withholding amount. Any individual to receive a payment under the Settlement will have the opportunity to submit an updated W-4 to Defendant within fourteen (14) days of the execution of the Settlement Agreement to modify his or her withholding amounts prior to the distribution of the Settlement funds.

The proposed Settlement provides an excellent recovery for Plaintiffs in this wage-and-hour action, particularly in light of Plaintiffs' total damages and the risks of proceeding in litigation. Absent settlement, Plaintiffs would have to prevail at decertification, summary judgment, trial, and appeal. At each of these stages, Defendant would present (and has presented, with respect to decertification) potentially effective arguments to reduce or destroy Plaintiffs' recovery. Although Plaintiffs believe they would ultimately defeat Defendant's arguments, Plaintiffs nonetheless would face real risks in pursuing this action through trial and appeal. Obtaining a $200,000.00 recovery is a considerable achievement in light of these risks.

The proposed Settlement satisfies all of the criteria for settlement approval under the law and falls well within the range of reasonableness. (*See* Cottrell Decl., ¶ 10). Accordingly, Plaintiff requests that the Court approve the Settlement Agreement as a fair and reasonable resolution of a *bona fide* FLSA dispute; and appoint Apex Class Action LLC Administration as Settlement

Administrator for the proposed Settlement and approve the estimated costs of settlement administration.[4]

## PROCEDURAL HISTORY

Plaintiff Krystal Gray filed this lawsuit on October 15, 2019, alleging causes of action under the FLSA and Colorado statutory law, based on Defendant's failure to compensate her and other similarly situated nursing employees for all hours worked (including overtime) and failure to provide uninterrupted, duty-free meal and rest periods. (ECF No. 1). Two additional plaintiffs filed consents to join the action on December 17, 2019 and December 19, 2019, respectively. (*See* ECF Nos. 18, 19). On February 6, 2020, Plaintiff filed an amended complaint in which she dismissed her statutory claims under Colorado law and added Rule 23 class claims under common-law theories of unjust enrichment and breach of quasi-contract. (ECF No. 28). Before the end of 2020, nine more plaintiffs opted in to the action. (*See* ECF Nos. 44–50).

On March 1, 2021, the Court granted Plaintiff's opposed motion to conditionally certify an FLSA Collective of "[a]ll individuals who have worked for [Defendant] as non-exempt, hourly paid employees with patient care responsibilities, such as nurses, nursing aides, nursing assistants, technicians, non-exempt therapists, and other similarly situated workers, with the exception of home healthcare employees, in the United States at any time after October 15, 2016." (ECF No. 61, p. 11). Several additional plaintiffs filed their consent to join after receiving Court-authorized notice. (*See* ECF Nos. 70–83). The parties were able to agree to dismiss some of them for falling outside of the scope of the certified collective (*see* ECF No. 102) but continued to disagree

---

[4] Plaintiff will seek approval of the proposed attorneys' fees and costs and the proposed Service Award by separate motion.

regarding the inclusion of several others.  Defendant moved to decertify the Collective on February 28, 2023. (ECF No. 119).

Settlement discussions have ebbed and flowed for some time in this nearly four-year-old case. (Cottrell Decl., ¶¶ 7-8). The parties mediated in December of 2021 but were unable to resolve the dispute. (*Id.*). Since then, Plaintiffs have vigorously prosecuted the matter, and Defendant has vigorously contested it. Around April of 2023, with several motions pending before the Court and trial looming, settlement talks picked up again, and the parties ultimately agreed on terms to fully resolve Plaintiffs' FLSA claims on April 19, 2023.[5] (*Id.*; *see* ECF No. 134).  The parties executed the Settlement Agreement on May 17, 2023.

## SUMMARY OF SETTLEMENT TERMS

For purposes of settlement, the parties have agreed to resolve the FLSA claims of Ms. Gray and FLSA Collective members Tamara Anderson, Misty Armendariz, Lisa Bejarano, Melissa Bland, Shana Duncan, Jennifer Eckerman, Gail Gartman, Julissa Govea, Cynthia Hirsch, Gail Houseweart, Linda Jacobson, Cherie Kottmeyer, Elizabeth Kotwasinski, Jennifer Lopshire, Meri McCartney, Jared Midgley, Bruce Nyblom, Amy Pettit, Patricia Pombo, and Brienne Whitmire. The Settlement Agreement further provides as follows:

### I.    Settlement Amount

Defendant has agreed to pay a total amount of $200,000.00 to fully resolve Plaintiffs' claims under the FLSA with respect to Defendant and any of its affiliated entities. (Settlement

---

[5] Pending at the time of settlement were Defendant's Motion to Decertify the Collective Action (ECF No. 119); Defendant's Motion Pursuant to 28 U.S.C. § 1404 to Change Location of Trial (ECF No. 124); Defendant's Motion to Dismiss Certain Opt-In Plaintiffs (ECF No. 125); Defendant's Motion in Limine (ECF No. 126); and Plaintiff's Motion in Limine (ECF No. 128). Trial was set for May 30, 2023. (*See* ECF No. 95).

Agreement, ¶¶ 9-10). Defendant has agreed to allocate the total Settlement Amount as described above within sixty (60) days of the Court's approval of the Settlement, in two (2) equal monthly installments (but in no event shall the first payment be made before June 15, 2023).  (*Id.* at ¶ 4).

## II.    Attorneys' Fees, Service Award, and Administration Costs

By separate motion, Plaintiffs' counsel (SWCK) will seek approval of an award of attorneys' fees and costs in the amount of [One Hundred and Seventy Thousand Dollars] ($[170,000.00]), paid from the total Settlement Amount, to compensate them for all work already performed in the litigation, as well as all work to be performed in effectuating settlement and obtaining final settlement approval and dismissal of Plaintiffs' FLSA claims with prejudice. In addition, the total Settlement Amount will be used to pay Plaintiff Krystal Gray a Service Award in the amount of $5,500.00 and administration costs to the Settlement Administrator in the estimated amount of $2,500.00.

After these deductions, the remaining funds will be distributed to Collective members as compensation for unpaid overtime, based on the Collective members' respective employment history, and as liquidated damages under the FLSA. Settlement checks distributed to the Collective members will remain valid for 180 days, after which the funds shall revert back to the Common Fund and be distributed as follows: first, a second distribution to Collective members who timely negotiated their checks from the first distributions on a similar *pro rata* basis as the first distribution, and, second, if any Collective members do not negotiate their second distribution check within 120 days of receipt, the redistributed funds shall revert back to the Common Fund and be donated *cy pres* to The Colorado Lawyer Trust Account Foundation.

**III.     Releases**

Effective on May 17, 2023:

Collective members will release and discharge Defendant and its affiliated entities from any and all claims that Defendant did not pay in full all wages required by the Fair Labor Standards Act. The claims released in the Settlement Agreement include, but are not limited to, claims for unpaid wages, overtime, unpaid rest periods, unpaid commissions, liquidated damages, interest, other compensation, benefits, and remuneration, unless such claims are not released as otherwise provided in the Settlement Agreement. (Settlement Agreement, ¶ 10).

Plaintiff Gray will also release and discharge Defendant and its affiliated entities from any and all claims that arose, or could have arisen, out of her employment with or separation of employment from Defendant through her final date of employment and through the execution of the Settlement Agreement, unless such claims are not released as otherwise provided in the Settlement Agreement. These released claims include, but are not limited to: wrongful discharge in violation of public policy; violation of any fair employment practices law; unpaid wages, overtime, other compensation, benefits or remuneration; violation of the FLSA or any other applicable state wage law, including, but not limited to, the Colorado Minimum Wages of Workers Act, Colorado's Equal Pay Law, or the Equal Pay Act, to the furthest extent allowable by law; the Employee Retirement Income Security Act of 1974, as amended; the Immigration Reform and Control Act; violation of the Worker Adjustment and Retraining Notification Act; violation of the Fair Credit Reporting Act; defamation, libel, slander, invasion of privacy, outrageous conduct, intentional interference with current or prospective contract, and all other negligent or intentional torts; breach of express or implied contract; breach of covenant of good faith and fair dealing;

promissory estoppel or other claims based on contract or agreement, promise, or equity; discrimination, harassment, constructive discharge, or retaliation prohibited under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, Sections 1981 through 1988 of Title 42 of the United States Code, or Colorado's Antidiscrimination Act, including, but not limited to, sex, gender, sexual orientation, pregnancy, race, color, national origin, ancestry, religion, creed, age, or disability discrimination;  the Older Workers Benefit Protection Act of 1990; discrimination, harassment, or retaliation under the Age Discrimination in Employment Act; disability discrimination, harassment, or retaliation under the Americans with Disabilities Act, the Americans with Disabilities Amendments Act, and/or the Colorado Antidiscrimination Act; genetic discrimination, harassment, or retaliation under the Genetic Information Nondiscrimination Act of 2008; violation of the National Labor Relations Act; interference with or retaliation of any rights under the Family and Medical Leave Act; any state or federal Constitutional provision; any state statute such as C.R.S. § 24-34-402; retaliation in violation of any state or federal law; and/or all other claims whether based on contract, tort, legal or equitable theories, or any federal, state or local law, regulation, ruling or ordinance, unless otherwise indicated in the Settlement Agreement. (*Id.* at ¶ 9).

## <u>LEGAL ARGUMENT</u>

As noted above, the Court has already conditionally certified this FLSA collective action under 29 U.S.C. § 216(b), and Collective members have had the opportunity to opt in. Accordingly, the parties may seek settlement approval in one step. *See Christeson v. Amazon.com.ksdc, LLC*, No. 18-2043-KHV, 2019 U.S. Dist. LEXIS 82718, at *3 (D. Kan. May 16, 2019); *Prim v. Ensign United States Drilling, Inc.*, 2018 U.S. Dist. LEXIS 131215, at *4–5 (D. Colo. Aug. 3, 2018)

(explaining that parties must first obtain conditional certification and provide Collective members the chance to opt in before moving for final approval of an FLSA action); *Gambrell v. Weber Carpet, Inc.*, No. 10-2131-KHV, 2012 U.S. Dist. LEXIS 154586 (D. Kan. Oct. 29, 2012) (approving FLSA settlement in one step after previously conditionally certifying the collective). Nonetheless, "[f]inal collective action certification is generally required before a court may approve a collective action settlement." *Judd v. Keypoint Gov't Sols., Inc.*, No. 18-cv-00327-RM-STV, 2021 U.S. Dist. LEXIS 3380, at *7 (D. Colo. Jan. 8, 2021).

## I.   The Court should finally certify the Collective.

To determine whether a plaintiff is similarly situated with other employees such that collective action is appropriate, courts in the Tenth Circuit employ a two-step process. *Brayman v. Keypoint Gov't Solutions, Inc.*, 595 F. Supp. 3d 983, 992 (D. Colo. 2022). Here, the Court has already completed the first step by conditionally certifying Plaintiffs' FLSA claims for collective action and authorizing notice to the Collective members. (ECF No. 61). Now, the Court must apply a "stricter standard" to determine whether Plaintiff and the Collective members are truly similarly situated such that final settlement approval is appropriate. *See Brayman*, 595 F. Supp. 3d at 992 (citing *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1102–03 (10th Cir. 2001)); *Judd*, 2021 U.S. Dist. LEXIS 3380 at *7. To make this determination, courts consider the following factors: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. *Brayman*, 595 F. Supp. 3d at 992 (citing *Thiessen*, 267 F.3d at 1103). Here, Plaintiffs and Defendant agree for purposes of settlement that all of these factors weigh in favor of finally certifying this case as a collective action for the purpose of settlement

only and for no other purpose as indicated herein.

### A. Plaintiffs' employment settings and experiences are similar in material respects.

"Courts have made it clear that employees' positions need not be identical in order for them to be similarly situated for purposes of a collective action under the FLSA." *Cory House v. Majestic Dude Ranch*, No. 20-cv-01505-KLM, 2021 U.S. Dist. LEXIS 162164, at *3 (May 4, 2021); (citing *Landry v. Swire Oilfield Services, L.L.C.*, 252 F. Supp. 3d 1079, 1114 (D.N.M. 2017)). For example, it is "immaterial" that some Plaintiffs may have "worked on different job sites, and [may have] had different supervisors." *Lozoya v. Allphase Landscape Constr., Inc.*, No. 12-cv-1048-JLK, 2014 U.S. Dist. LEXIS 7137, at *5 (D. Colo. Jan. 21, 2014); *see also Geiger v. Z-Ultimate Self Def. Studios LLC*, No. 14-cv-00240-REB-NYW, 2016 U.S. Dist. LEXIS 202320, at *16 (D. Colo. Nov. 23, 2016) (granting final certification even though "plaintiffs work[ed] for a variety of separate entities in a variety of locations"). What matters is whether the evidence shows that Plaintiffs were "subject to the same challenged pay policies." *Lozoya*, 2014 U.S. Dist. LEXIS 7137 at *6. Because the evidence makes it clear that they were, "collective treatment is appropriate." *Id.*

Granular differences may exist among Plaintiffs' work experiences. "[I]f one zooms in close enough on anything, differences will abound." *Thompson v. Bruister & Assocs.*, Inc., 967 F. Supp. 2d 1204, 1220 (M.D. Tenn. 2013) (internal alterations omitted). To defeat final certification, however, the differences must be so great as to prevent efficient resolution on a collective basis. *See id.* Here, any minor differences do not change the fact that Plaintiffs were all subject to the same allegedly unlawful policies, including:

- Defendant's uniform meal period policy requiring Plaintiffs to clock out for meal breaks though the employee may be interrupted during that time ;

- Defendant's uniform policies that prohibit Plaintiffs from working overtime without approval and during meal periods without reporting such time;

- Defendant's uniform disciplinary procedures for employees who violate company policies, including the policy against unapproved overtime;

- Defendant's uniform patient care standards that dictate how Plaintiffs perform their jobs and require Plaintiffs to be "on-call" and subject to interruptions even when off the clock; and

There is evidence that the above policies were applied uniformly at the organization. Accordingly, Plaintiffs are similarly situated for collective action, and final certification is appropriate.

### B.  For purposes of this settlement, Defendant's defenses can be resolved on a collective basis using representative, common proof.

"The second factor inquires as to whether there exist defenses that need to be litigated on an individual basis." *Brayman*, 595 F. Supp. 3d at 994 (internal quotation marks omitted). Alone, "[t]he need for individual factual determinations is not fatal to certification of a[n] FLSA collective action." *Underwood v. NMC Mortg. Corp.*, No. 07-2268-EFM, 2009 U.S. Dist. LEXIS 39743, at *11 (D. Kan. May 11, 2009) (internal quotation marks omitted). To warrant denial of final certification, there must be "defenses as to the issue of liability [that] are so individualized that collective adjudication of Plaintiff[']s claims [is] truly unworkable." *See id.*

Before the Settlement rendered moot,  its motion to decertify the collective, Defendant argued in that motion that (1) certain Collective members are potentially barred by the statute of limitations and/or do not fall within the Collective definition; (2) "supervisors and not the organization" manage the timekeeping system in their own departments; and (3) some Collective

10

members worked before or after their scheduled shift times and received overtime pay. (*Id.* at pp. 6–7). These issues have been addressed in the Settlement.

### 1.    Statute of Limitations and Ineligible Collective Members

Any concerns regarding Plaintiffs whose claims do not fall within the statute of limitations or who do not meet the Collective definition are no obstacle to final certification. The applicable employment dates and limitations periods for these Plaintiffs simply require the parties to calculate dates and have been resolved as part of the Settlement. This minor issue is not enough to deny final certification. *Charbonneau v. Mortg. Lenders of Am. L.L.C.*, No. 2:18-cv-02062-HLT-ADM, 2021 U.S. Dist. LEXIS 4537, at *23 (D. Kan. Jan. 11, 2021) ("To the extent this defense may require some individualized inquiry, it does not warrant decertification."). Likewise, any concern regarding Plaintiffs who may not fall within the Collective definition have been accounted for in the Settlement.

### 2.    Supervisors

As noted above, even if individual supervisors managed the timekeeping system in their respective departments, this would not render the case unsuitable for collective treatment.  As the Court has already determined, "there is no question that the same practice [of forcing patient-care workers to work unpaid overtime off the clock] applied across all relevant staff." (ECF No. 61, p. 7). This is because, despite any localized management of timekeeping systems by department supervisors, "Defendant's codified meal period, timekeeping, and overtime policies were uniform and applied to all hourly patient care employees." (*Id.*). As noted above, because Plaintiffs' allegations "concern a company-wide policy that was applied under all supervisors, the existence

of different supervisors is no obstacle." *Lozoya*, 2014 U.S. Dist. LEXIS 7137 at *5.

### 3. "Some of the Collective members received extensive overtime pay."

As the Court explained, "the exact number of times each employee worked pre- and post-shift or during meal periods, and the precise hours of uncompensated overtime, go to individual damages and not whether conditional certification is warranted." (ECF No. 61, p. 10). In *Underwood v. NMC Mortgage Corporation*, the court explained further:

> Only after there is an initial determination of whether Defendant required Plaintiffs to work overtime or whether Defendant forbade overtime will the question become more individualized as to whether Plaintiffs did work overtime and the amount of such overtime. This, however, has more to do with Plaintiffs' damages as there will be a determination of the hours Plaintiffs worked and if the Plaintiffs were appropriately compensated. **The need for this type of straightforward inquiry is not sufficient to defeat the propriety of a collective action.**

*Underwood v. NMC Mortg. Corp.*, No. 07-2268-EFM, 2009 U.S. Dist. LEXIS 39743, at *12 (D. Kan. May 11, 2009) (internal quotation marks omitted) (bold supplied).

The fact that Collective members received overtime pay to varying degrees simply does not present the type of individualized inquiry necessary to render collective action inappropriate. *See id.*; *Medrano v. Flowers Foods, Inc.*, No. 16-350 JCH/KK, 2021 U.S. Dist. LEXIS 143745, at *18 (D.N.M. Aug. 2, 2021) ("The Court concludes that individualized inquiries into the number of uncompensated hours worked do not warrant decertification."); *Brayman*, 595 F. Supp. 3d at 994 ("Whether individualized determinations are necessary to define the extent of Plaintiffs' damages, if any, does not weigh against efficiently establishing Defendants' class-wide liability.") (internal quotation marks omitted). Indeed, "[i]f such inquiries on damages were an obstacle to

collective resolution in FLSA overtime cases, very few could ever be decided on a collective basis." *Id.*

In sum, as the Court has already determined, Plaintiffs are similarly situated for collective action for purposes of settlement, and neither disparate facts nor individualized defenses exist to justify denying final certification.

### C.  Fairness and procedural considerations support collective treatment.

Denying final certification of a Collective of Plaintiffs who share a common factual nexus and substantially similar legal claims would neither be efficient nor consistent with the purpose of the FLSA.  *See Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 541 (S.D. Tex. 2008) ("the FLSA is a remedial statute … and the Supreme Court has acknowledged that Congress intended to give plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. … [A] close call as to whether Plaintiffs are similarly situated should be resolved in favor of certification." (internal quotation marks and citation omitted). The Settlement here will provide an excellent recovery to Plaintiffs who would otherwise be potentially unable to vindicate their rights, and it will efficiently resolve common issues of law and fact. Accordingly, the Court should finally certify the Collective for purposes of settlement.

### II.    The Court should approve the Settlement Agreement as fair and reasonable resolution of a *bona fide* dispute under the FLSA.

Before the Court may approve the settlement of Plaintiffs' FLSA claims, it must "'scrutiniz[e] the settlement for fairness'" and decide whether the Settlement is a "'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 127–28 (D. Colo. 2016) (quoting *Lynn's Food Stores v. United States*,

13

679 F.2d 1350, 1353, 1355 (11th Cir. 1982)) (alteration in *Pliego*); *see also Florece v. Jose Pepper's Rests., LLC*, No. 20-2339-ADM, 2021 U.S. Dist. LEXIS 209010, at *7 (D. Kan. Oct. 29, 2021) ("Court approval is required to settle … FLSA claims."). As part of its assessment, the Court should consider whether "'(1) the FLSA settlement [wa]s reached as a result of a bona fide dispute, (2) the settlement is fair and equitable to all parties, and (3) the settlement contains a reasonable award of attorney's fees.'" *Rodriguez v. 5830 Rest. Corp.*, No. 21-cv-01166-KLM, 2023 U.S. Dist. LEXIS 18906, at *18 (D. Colo. Feb. 3, 2023) (quoting *Herring v. Thunder Ridge Trucking & Filtration, Inc.*, No. 15-cv-00062-RM-KLM, 2016 U.S. Dist. LEXIS 182807, at *5 (D. Colo. May 24, 2016)); *see also Baker v. Vail Resorts Mgmt. Co.*, No. 13-cv-01649-PAB-CBS, 2014 U.S. Dist. LEXIS 22812, at *3 (D. Colo. Feb. 24, 2014). All of these considerations weigh in favor of approval here.

### A.  The Settlement was reached as a result of a *bona fide* dispute.

Parties seeking approval of an FLSA settlement[6] may establish that a *bona fide* dispute exists by presenting: "(1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons

---

[6] There is a split of authority on whether judicial approval of FLSA settlements is required or statutorily authorized. Many courts follow the Fifth Circuit's reasoning set out in *Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247 (5th Cir. 2012) and find that "parties to a bona fide FLSA claim may resolve their dispute via a private settlement agreement, with such agreement being legally effective regardless of submission to or approval by the trial court." *Martinez v. Back Bone Bullies Ltd.*, Civil Action No. 21-cv-01245-MEH, 2022 U.S. Dist. LEXIS 45870, at *32 (D. Colo. Mar. 15, 2022); *see also Riley v. D. Loves Rests.*, No. 20-1085 WJ/KK, 2021 U.S. Dist. LEXIS 68126, at *10-11 (D.N.M. Apr. 8, 2021) ("The Court's assessment of the current legal landscape is this: judicial approval is not required for private settlements of claims brought under the FLSA, where the parties' agreement resolves bona fide disputes regarding the amount of hours worked or compensation due rather than waiving or releasing the employee's substantive rights under the Act.") The Tenth Circuit has not expressly addressed the issue.

for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification

for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's

estimate of the number of hours worked and the applicable wage." *Baker*, 2014 U.S. Dist. LEXIS

22812 at *3.

Regarding the first factor, Defendant disputes that it failed to pay Plaintiffs for all hours

worked and to provide legally compliant meal and rest periods and that such failure was willful.

On the second factor, the parties represent that Defendant is a healthcare organization that owns

and operates 48 hospital departments and 13 clinics throughout Delta County, Colorado. (ECF No.

119-4, ¶ 2). Plaintiffs were all employed by Defendant as patient care employees at one or more

of Defendant's departments and/or clinics.[7]

As to the third factor, Defendant does not dispute that its employees are generally entitled

to overtime wages, but Defendant does dispute that it failed to pay Plaintiffs for off-the-clock work

and the extent to which Plaintiffs are entitled to unpaid overtime compensation. Plaintiffs, on the

other hand and in reference to the fourth factor, allege that Defendant maintained a policy and

practice of requiring them to work off the clock before and after shifts and during meal and rest

periods. In many instances, Plaintiffs allege, this unpaid work represents overtime hours for which

Plaintiffs are entitled to premium pay. Regarding the fifth factor, the parties agree, based on review

of the Collective members' time records, on the computation of wages owed.

---

[7] Plaintiffs were/are non-exempt, hourly paid employees with patient care responsibilities, such
as nurses, nursing aides, nursing assistants, technicians, non-exempt therapists, and other
similarly situated workers, with the exception of home healthcare employees, in the United States
at any time after October 15, 2016. (*See* ECF No. 61, p. 11).

15

In light of the above, "this case is not sham litigation and … very much involves a bona fide dispute between adversarial opponents."  *Whittington v. Taco Bell of Am., Inc.*, No. 10-cv-01884-KMT-MEH, 2013 U.S. Dist. LEXIS 161665, at *13 (D. Colo. Nov. 13, 2013). This factor supports approval.

### B.  The Settlement is fair and equitable to all parties.

With respect to this factor, courts first evaluate "whether the settlement is fair and reasonable, and, second, whether the settlement undermines the purposes of the FLSA." *Herring*, 2016 U.S. Dist. LEXIS 182807 at *5.

### 1.    The Settlement is fair and reasonable.

In determining whether an FLSA settlement is fair and reasonable, courts "turn to the factors" used for evaluating the fairness of a proposed class-action settlement under Rule 23. *Baker*, 2014 U.S. Dist. LEXIS 22812 at *5–6 (citing *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002)). Under that analysis, courts consider the following four factors: (1) whether the settlement was fairly and honestly negotiated; (2) whether serious questions of law or fact exist, placing the outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter*, 314 F.3d at 1188.  All of these factors favor approval here.

### 2.    The Settlement was fairly and honestly negotiated.

"The fairness of [a] settlement negotiation should be examined 'in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may

have marred the negotiations themselves.'" *Rothe v. Battelle Mem. Inst.*, No. 1:18-cv-03179-RBJ, 2021 U.S. Dist. LEXIS 117836, at * 12–13 (D. Colo. June 24, 2021) (Jackson, J.) (quoting *Ashley v. Reg'l Transp. Dist.*, No. 05-cv-01567-WYD-BNB, 2008 U.S. Dist. LEXIS 13069, at *15 (D. Colo. Feb. 11, 2008). The primary concern is protecting "'class members whose rights may not have been given adequate consideration during' settlement negotiations." *Rothe*, 2021 U.S. Dist. LEXIS 117836 at *13 (quoting *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 283 (D. Colo. 1997)).

Here, the parties are represented by experienced counsel who specialize in the type of wage-and-hour claims alleged in this action. (Cottrell Decl., ¶¶ 11-13).  The parties engaged in formal and informal discovery regarding Plaintiffs' claims and Defendant's defenses—including written discovery, depositions, and numerous interviews of Collective members—and extensive motion practice—including more than one motion to dismiss, Plaintiffs' motion to conditionally certify the FLSA Collective, and Defendant's subsequent motion to decertify it. (*Id.* at ¶ 7). During this process, each party gained ample information to fully evaluate the strengths and weaknesses of their claims and defenses, as well as the fairness of the Settlement Agreement. Counsel for the parties rigorously negotiated the settlement terms, such that there can be no doubt that the settlement was honestly and fairly negotiated, and not the product of collusion. (*Id.* at ¶ 8); *see Lucas v. Kmart Corp.*, 234 F.R.D. 688 at 693 (D. Colo. 2006) (presuming settlement to be fair and reasonable where it was the result of "arm's length negotiations between experienced counsel after significant discovery").

### 3.    Serious questions of law exist.

To continue through trial would expose the parties to significant risks. *See Wilkerson*, 171 F.R.D. 273 at 285–86 ("Indeed, the one constant about litigation, based on my experiences as a trial attorney and now as a judge, is that the ultimate jury result is uncertain, unknown and unpredictable."). Plaintiffs believe their claims are strong but recognize that success is not guaranteed. Regarding both the merits of Plaintiffs' claims and damages, Plaintiffs strongly believe that they would prevail in demonstrating that Defendant maintained a company-wide practice of requiring all Collective members to work off the clock before and after shifts and during meal and rest periods. (Cottrell Decl., ¶ 9). Defendant, on the other hand, maintains that it complied with the law at all times and that several of the Collective members should be excluded from the Collective on statute-of-limitations and/or other grounds. (*See* ECF No. 119, pp. 5–7). These questions place the outcome of the litigation in doubt with respect to liability and damages and counsel in favor of settlement. *See Murray v. Tips, Inc.*, 2020 U.S. Dist. LEXIS 63923, at *16 (D. Colo. Apr. 13, 2020) (finding that, in part because "there are serious questions of law and fact which place the ultimate outcome of the litigation in doubt[,] … the Court finds the proposed settlement may be … approved.").

### 4.    The value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation.

"The 'value of an immediate recovery' means the 'monetary worth of the settlement.'" *Rothe*, 2021 U.S. Dist. LEXIS 117836 at *16–17 (quoting *Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993)). "This value should be measured against 'the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with

protracted litigation.'" *Rothe*, 2021 U.S. Dist. LEXIS 117836 at *17 (quoting *Gottlieb*, 11 F.3d at 1015).

The parties here contest several issues, including the inclusion of several individuals in the Collective, whether Defendant required the Collective members to work off the clock, and the degree to which individual Collective members are entitled to overtime pay (damages). Given these unresolved issues, proceeding in this litigation could result in no recovery for Collective members or a significantly lower recovery than provided for in the Settlement. Thus, it is wise for the parties to "take the bird in the hand instead of a prospective flock in the bush." *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974).

Moreover, the amount recovered, and Plaintiffs' total damages cut in favor of settlement approval. Plaintiff retained an expert to prepare a damages' report and testify at trial. In that report, which was provided before settlement discussions resumed, Plaintiff's expert calculated Plaintiffs' *total damages* at $45,689.00. (*See* Creal Report). This figure represents nearly 100% of Plaintiffs' FLSA damages, based on a 3-year statute of limitations, and fully liquidated.  (Cottrell Decl. at ¶ 14).

Accordingly, the value of an immediate recovery outweighs any uncertain future relief, and the Settlement Agreement should be approved. *See Pliego*, 313 F.R.D. at 130–31 ("The proposed settlement reflects a reasonable compromise of the risk Plaintiff and the Class faced had they proceeded to trial … Moreover, given the inherent risks associated with further litigation, the Class Members may recover less should the case proceed through trial. Thus, the proposed settlement at this stage far outweighs any potential benefits, if any at all, of further litigation.").

### 5.    The parties believe the Settlement is fair and reasonable.

"Counsels' judgment as to the fairness of [a settlement] agreement is entitled to considerable weight." *Lucas*, 234 F.R.D. at 695 (internal quotation marks omitted). Here, the parties' counsel, among whom are attorneys with substantial experience in complex class action litigation, including wage-and-hour class actions in the healthcare industry, unanimously support the Settlement as fair and reasonable. The Court should afford this judgment its due weight and find that the Settlement is fair and reasonable.  See *Alvarado Partners v. Mehta*, 723 F. Supp. 540, 548 (D. Colo. 1989) ("Courts have consistently refused to substitute their business judgment for that of counsel and the parties.").

### 6.    The Settlement does not undermine the FLSA.

In evaluating whether a proposed settlement undermines the FLSA, courts ask whether the settlement adheres to the statute's purpose, which is to protect employees' rights from employers with superior bargaining power. *Baker*, 2014 U.S. Dist. LEXIS 22812 at *7. To make this determination, courts consider: (1) the presence of other similarly situated employees, (2) the likelihood that Plaintiffs' circumstances will recur, and (3) whether Defendant has a history of non-compliance with the FLSA. *Id.*; *Herring*, 2016 U.S. Dist. LEXIS 182807 at *6.

Here, all of Defendant's employees who were similarly situated to Plaintiff during the relevant period are included in the FLSA Collective. Thus, each of Defendant's employees who was disadvantaged by Defendant's superior bargaining power, and who was allegedly denied overtime compensation and duty-free meal and rest periods, is included in the Settlement. By seeking damages for all similarly-situated employees, this lawsuit counters the bargaining-power

advantage normally enjoyed by Defendant. The Settlement therefore effectuates rather than undermines the purpose of the FLSA.

Defendant has a strong incentive to refrain from engaging in unlawful conduct in the future. Additionally, in 2020 Defendant has modified its time keeping systems making time entry more convenient to the employees. Furthermore, because Defendant's employees have now participated in a successful FLSA enforcement action, and because the Collective members are in contact with their counsel, who specialize in wage-and-hour litigation, Defendant knows that any future violation of the FLSA would likely be litigated, further deterring future violations. Thus, this factor supports a finding that the Settlement effectuates the purposes of the FLSA. Finally, Defendant represents that it has never been part of an enforcement action brought by any governmental agency or private plaintiff seeking to enforce the FLSA. Because there is no history of non-compliance with the FLSA, this factor weighs in favor of a finding that the Settlement effectuates rather than undermines the purposes of the FLSA.

### III.    The proposed attorneys' fees award and service award are reasonable.

The parties will move separately for approval of their proposed attorneys' fees award and Service Award to Plaintiff Krystal Gray. As detailed in that motion, the proposed fees and Service Award are reasonable, reflect fair compensation for services performed, and still allow for a substantial recovery for the Collective.

### CONCLUSION

For the foregoing reasons, the parties respectfully request that the Court grant this motion for preliminary approval and enter an order consistent with the Proposed Order filed herewith.

Dated: May 17, 2023                     Respectfully submitted,

                                        SCHNEIDER WALLACE
                                        COTTRELL KONECKY LLP

                                        By: */s/ David C. Leimbach*
                                        Carolyn H. Cottrell
                                        David C. Leimbach
                                        2000 Powell Street, Suite 1400
                                        Emeryville, California
                                        Tel: (415) 421-7100; Fax: (415) 421-7105
                                        ccottrell@schneiderwallace.com
                                        dleimbach@schneiderwallace.com

                                        *Attorneys for Plaintiff, Class, and Collective*
                                        *Members*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon counsel of record

for all parties through the Court's CM/ECF system on May 17, 2023.

                                        */s David C. Leimbach*
                                        David C. Leimbach